## SUSAN DAVIES *v.* GENERAL TOURS, INC.
### (AC 20028)

Foti, Schaller and Stoughton, Js.

Argued January 10—officially released April 24, 2001

*Ian Angus Cole*, for the appellant (plaintiff).

*Julie A. Harris*, for the appellee (defendant).

*Opinion*

FOTI, J. The plaintiff, Susan Davies, appeals from the trial court's judgment granting the motion for summary judgment in favor of the defendant, General Tours, Inc. On appeal, the plaintiff claims that the court improperly (1) concluded that the defendant did not owe a duty to her to warn her of dangers it knew, or should have known, existed when traveling on certain tour buses, (2) concluded that the defendant could not be liable for any acts or omissions of another tour agency, despite having made representations that it was its "partner agency," (3) concluded that the representations and assurances of care the defendant made to the plaintiff were not warranties, and (4) relied on statements in an affidavit that the defendant submitted in support of its motion that could not have been made on the affiant's personal knowledge.[1] We affirm the judgment of the trial court.

The following facts and procedural history are necessary to our resolution of the issues presented in this appeal. The plaintiff alleged the following facts in her complaint. The plaintiff booked a sight-seeing tour of Morocco with the defendant tour operator in January, 1995. The defendant arranged for air and overland transportation, hotel accommodations, guides and tours of

---

[1] The plaintiff also claims that the court improperly concluded that she was bound by a waiver of liability that she submits she neither saw nor signed. Because our conclusions regarding the plaintiff's other claims are dispositive of this appeal, we need not address that issue.

cities, and arranged the plaintiff's touring schedule. The defendant both implicitly and explicitly represented that it would provide her with safe accommodations and transportation during her trip. The defendant also "employed a tour manager to escort the plaintiff and others on the tour to 'assure a safe and comfortable trip.'" The plaintiff further alleged that the defendant conducted its tours in Morocco through a partnership or joint venture with Recep Tours (Recep), a Moroccan travel agency.

The plaintiff further alleged that the tour guide, baggage handler and bus driver that served her upon her arrival in Morocco and prior to the events giving rise to this action were employees of Recep, acting within the scope of their employment as agents or employees of the defendant in Morocco. The plaintiff claimed that she did not know of the dangers inherent in bus travel on Moroccan highways and that the defendant had a duty to warn her of any inherent dangers connected with such travel. During her touring activities in Morocco, the driver of the bus carrying the plaintiff and other members of her tour group stopped alongside a highway so that passengers could disembark to observe camels wandering about the desert. As the plaintiff stepped from the tour bus to the ground, she slipped, hit the ground and broke her ankle. The plaintiff alleged that the defendant's negligence caused her injuries.

The defendant thereafter filed a motion for summary judgment. It argued that it was entitled to judgment in its favor as a matter of law because no genuine issues of material fact existed. Specifically, the defendant argued that it did not own the bus from which the plaintiff fell, it did not employ any of the tour personnel that served the plaintiff in Morocco and did not possess knowledge of the existence of the dangerous condition that the plaintiff alleged caused her to fall. The defendant also

argued that it could not be held vicariously liable for any alleged acts or omissions of the tour personnel in Morocco because it did not employ any of those individuals and was not engaged in either a joint venture or partnership with Recep. The defendant also argued that it did not guarantee the plaintiff's safety, the quality of services rendered to her by independent contractors in Morocco or her well-being during the duration of her trip.

The court agreed with the defendant and concluded, on the basis of the affidavits and other evidence properly before it, that no genuine issues of material fact existed that precluded judgment for the defendant. On the basis of the evidence before it, the court concluded that the defendant was not engaged in a partnership or a joint venture with Recep. The court also concluded that the defendant's representations concerning its relationship with Recep did not establish a partnership under the partnership by estoppel theory advanced by the plaintiff, and that the plaintiff failed, as a matter of law, to demonstrate that the defendant owed her a duty to warn her of any danger connected to bus travel in Morocco or that the language in the defendant's travel brochure constituted a warranty that the plaintiff would enjoy a safe or negligence-free trip. The court also concluded that the defendant had expressly disclaimed its liability for any acts beyond its control by third parties.

"The standards governing our review of a trial court's decision to grant a motion for summary judgment are well established. Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 744–45, 660 A.2d 810 (1995). In deciding a motion for summary judgment, the trial court

must view the evidence in the light most favorable to the nonmoving party. . . . Id., 745. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law; *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980); and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. Practice Book [§ 17-46]. . . . *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 105, 639 A.2d 507 (1994)." (Internal quotation marks omitted.) *Raynor* v. *Hickcock Realty Corp.*, 61 Conn. App. 234, 236, 763 A.2d 54 (2000).

" 'On appeal, [w]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 693, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998). Because the trial court rendered judgment for the [defendant] as a matter of law, our review is plenary and we must decide whether [the trial court's] conclusions are legally and logically correct and find support in the facts that appear in the record. . . . *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 229, 654 A.2d 342 (1995).' " *Kroll* v. *Steere*, 60 Conn. App. 376, 380–81, 759 A.2d 541, cert. denied, 255 Conn. 909, 763 A.2d 1035 (2000).

I

The plaintiff first claims that the court improperly determined that the defendant did not owe her a duty to warn her of dangers of which it knew, or should have known, concerning travel on Moroccan tour buses. We disagree.

The plaintiff alleged that "the defendant owed a duty to the plaintiff to disclose reasonably obtainable information concerning the safety of surface transportation it provided or contracted to provide in Morocco." The plaintiff further alleged that the plaintiff did not know of the dangers inherent in bus travel in Morocco and that the defendant "had a duty to warn the plaintiff of dangers inherent in alighting from the tour buses it owned, operated or contracted for during the tour." The plaintiff filed an affidavit along with her opposition to the defendant's motion for summary judgment and averred that she had not been warned that it was unsafe to step down from the tour bus unassisted and that, when she tried to step down, her foot slid out from under her in loose sand.

The court concluded, as a matter of law, that the plaintiff failed to establish a factual basis on which the defendant could be held liable for her injuries under a failure to warn theory. The court noted that "the plaintiff has neither alleged nor shown facts showing that the defendant was . . . even remotely aware of the unfriendly sand conditions in Morocco."

This issue requires us to consider whether the defendant tour operator had a duty to warn the plaintiff of the condition she encountered when alighting from the tour bus in Morocco. "Negligence occurs where one under a duty to exercise a certain degree of care to avoid injury to others fails to do so." *Dean* v. *Hershowitz*, 119 Conn. 398, 407–408, 177 A. 262 (1935). It is well settled that to state a cause of action for negligence, a plaintiff must establish "duty; breach of that duty; causation; and actual injury." *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384, 650 A.2d 153 (1994). "The existence of a duty is a question of law, and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation. *Petriello* v. *Kalman*, 215 Conn. 377, 382–83,

576 A.2d 474 (1990)." *Leavenworth* v. *Mathes*, 38 Conn. App. 476, 479, 661 A.2d 632 (1995). Determining the extent of a tour operator's duty to warn tourists of dangerous conditions is an issue of first impression in Connecticut. We find illuminating, therefore, the opinions of federal courts that have considered that issue. See *Stratford* v. *International Assn. of Firefighters, AFL-CIO, Local 998*, 248 Conn. 108, 118, 728 A.2d 1063 (1999).

"[C]ourts have usually found that there never existed a relationship which would have given rise to a duty on the part of the travel agent to investigate the safety or instrumentalities over which it had no control or knowledge." *McAleer* v. *Smith*, 860 F. Sup. 924, 931 (D.R.I. 1994). "Courts in other jurisdictions have also concluded that there is no general duty on the part of a tour operator to warn tourists as to general safety precautions." *Sova* v. *Apple Vacations*, 984 F. Sup. 1136, 1141 (S.D. Ohio 1997).

"Courts have further noted that there is no duty on the part of a tour operator to warn a tour participant of obvious and apparent dangers." Id. "[A] tour operator may be obligated, under some circumstances, to warn a traveler of a dangerous condition unknown to the traveler but known to it . . . . This doctrine of law applies to situations where a tour operator is aware of a dangerous condition not readily discoverable by the plaintiff. It simply does not apply to an obvious dangerous condition equally observable by [a plaintiff and a tour operator]." *Passero* v. *DHC Hotels & Resorts, Inc.*, 981 F. Sup. 742, 744 (D. Conn. 1996).

The plaintiff in *Passero* purchased through her travel agent a tour package for a vacation in Aruba from the defendant tour operator. Id., 743. While at her hotel in Aruba, the plaintiff sustained injuries after tripping over a flotation mat that was near her chair beside the hotel

pool. Id. The United States District Court for the District of Connecticut granted the defendant tour operator's motion for summary judgment, concluding that the tour operator was not bound by a duty to warn the plaintiff of the presence of the flotation device located near her chair in "broad daylight." Id., 744. The plaintiff did not persuade the District Court that she should be given an opportunity to determine whether the defendant tour operator had notice of that dangerous condition. Id.; accord *Stafford* v. *Intrav, Inc.*, 841 F. Sup. 284, 287–88 (E.D. Mo. 1993), aff'd, 16 F.3d 1228 (8th Cir. 1994).

A plaintiff must demonstrate that the defendant knew that a danger existed before the duty to warn is implicated. The plaintiff in the present case has not done so. See *Wilson* v. *American Trans Air, Inc.*, 874 F.2d 386, 391 (7th Cir. 1989) (absent showing that defendant charter tour operator knew there were safety issues at local hotel, defendant could not be held liable for assault on member of tour group under duty to warn theory of recovery); cf. *Miller* v. *Group Voyagers, Inc.*, 912 F. Sup. 164, 166 (E.D. Pa. 1996) (defendant's motion to dismiss denied where plaintiff tour group members alleged defendant tour group operator had knowledge of unsuitable, dangerous hotel conditions). The plaintiff has failed to present evidence sufficient to establish the existence of a genuine issue of material fact that the defendant was aware of any particular risk inherent in travel on the tour buses used in Morocco or in the practice of stepping off of those buses onto uncertain roadside terrain.

To the extent that the plaintiff claims that the defendant should have warned her about dangerous terrain at the exact location her tour bus in Morocco stopped, we agree with the court's conclusion that the plaintiff has not demonstrated that the defendant was even remotely aware of those site specific conditions. In fact, the defendant's vice president of group services,

Thomas Flynn, attested in his affidavit that the defendant "had no prior knowledge of precisely where the bus on which the plaintiff was a passenger would stop, nor of the condition of the soil where the bus would stop, nor of the height of the step from the ground where the bus stopped on the date in question. To our knowledge this was a nonscheduled stop." The plaintiff has not demonstrated a genuine issue of material fact concerning the defendant's knowledge. This also is a case in which the plaintiff "was in a far better situation to assess the situation than [the defendant who] had no duty to warn her of a danger she could have observed but about which [the defendant] knew nothing." *Honeycutt* v. *Tour Carriage, Inc.*, 997 F. Sup. 694, 699 (W.D.N.C. 1996).

To the extent the plaintiff alleges on the basis of the defendant's representations in its tour brochure that the defendant was under a contractual duty to warn her of dangerous conditions inherent in bus travel during her tour, we conclude, as a matter of law, that the plaintiff has not set forth facts adequate to establish that duty.[2] The plaintiff also fails to demonstrate an implied obligation in regard to that alleged duty. As we will explain in part II, the evidence in the record leads only to the conclusion that defendant was an independent contractor relative to the local tour agency that escorted the plaintiff during her stay in Morocco. Acting as an independent entity, without any right to exercise control or supervision over the bus driver or tour guide who escorted the plaintiff during her stay in Morocco, the defendant lacked both an opportunity to know of site specific dangers the plaintiff might encounter and to warn her of those dangers.

The plaintiff relies heavily on *Rookard* v. *Mexicoach*, 680 F.2d 1257 (9th Cir. 1982), in support of her argument

[2] In part III, we will discuss more fully the specific representations that the defendant made to the plaintiff.

that the defendant owed her a duty to warn. The plaintiffs in *Rookard* alleged that they had purchased tickets for passage to Mexico from the defendant bus company, which held itself out as an agent and a carrier for travel into Mexico. Id., 1259. The plaintiffs alleged that the defendant "affirmatively vouched for their safe passage" to their destination in Mexico. Id. The defendant failed to tell the plaintiffs either the identity of or any risks inherent in traveling with the connecting Mexican bus carrier that the plaintiffs would be traveling with in Mexico. Id. After the defendant safely transported the plaintiffs to a terminal in Tijuana, Mexico, the plaintiffs boarded a Del Pacifico bus for the remainder of their journey. Id. That bus was subsequently involved in an accident, caused by the gross negligence of the Del Pacifico driver, which caused the plaintiffs to sustain severe injuries. Id.

The United States District Court in *Rookard* granted summary judgment in favor of the defendant after concluding that "the originating carrier has no liability for torts committed by a connecting carrier and that there was no duty to warn." Id. The United States Court of Appeals for the Ninth Circuit reversed that judgment, reasoning that questions of fact existed that rendered granting of the defendant's motion inappropriate. Id., 1263. Specifically, the Ninth Circuit noted that a question of fact existed as to whether the defendant was acting as an agent of the plaintiffs. Id., 1261. If it was so acting, the defendant may have owed the plaintiffs a duty to warn. Id., 1263. The Ninth Circuit also concluded that the plaintiffs properly had submitted an evidentiary basis to the District Court showing that the defendant bus company knew of the certain and real dangers inherent in bus travel in Mexico.

The facts of the present case are distinguishable from those in *Rookard*. The defendant in the present case is a tour operator that contracted with an independent

entity in Morocco to provide bus travel for the plaintiff. In response to the defendant's interrogatories, the plaintiff claimed that the inherent danger that the defendant should have warned her about was the "[l]ack of adequate hand hold, height of step down from bus, soil consistency of road shoulder material, etc." The plaintiff has neither alleged nor demonstrated that the defendant knew or possessed the ability to learn about those unique conditions.

Given the facts before this court, we can discern no duty that the defendant owed to the plaintiff to warn her of the alleged hazard that caused her injury. For those reasons, the court properly granted the defendant's motion on this issue.

## II

The plaintiff next claims that the court improperly determined, as a matter of law, that the defendant could not be liable for the acts or omissions of Recep or its employees despite the defendant's representation that Recep was its "partner agency." The plaintiff claims, essentially, that a genuine issue of material fact existed as to whether the defendant's assertions about its relationship with Recep estopped the defendant from denying the existence of a partnership with Recep. We disagree.

The plaintiff, in her complaint, alleged that the defendant conducted its tours in Morocco through "a partnership and/or joint venture" with Recep. She further alleged that her tour guide in Morocco, a Recep employee, as well as the bus driver and the baggage handler who assisted the plaintiff on her arrival in Morocco, were acting within the scope of their employment with the defendant or with the defendant's partner agency, Recep. In several specifications of negligence, she alleged that those individuals caused her injuries.

The defendant refuted the allegations that either an agency or employment relationship existed between itself and Recep's employees whom the plaintiff encountered during her trip.[3] The defendant asserted that Recep acted as an independent contractor. The plaintiff argued, in opposition to the defendant's motion, that the defendant could be held vicariously liable for the acts or omissions of those individuals because it could not avoid liability for the plaintiff's injuries by disavowing its explicit representations of a partnership with Recep.[4] In other words, the plaintiff argued that the defendant was estopped from denying partnership liability because the defendant permitted Recep to act as its apparent agent in Morocco. The court properly concluded, on the basis of the evidence before it, that no genuine issue of material fact existed, as the plaintiff suggests, concerning that issue. The court further concluded that no partnership by estoppel existed between the defendant and Recep, and that the terminology used by the defendant in its brochure was "at most, an unfortunate choice of words which conveyed no sense of a legal business partnership." Our analysis must proceed, therefore, on the basis of

[3] The defendant submitted to the court Flynn's affidavit in which he attested that Recep acted solely as an independent contractor. He further stated that Recep acted as a ground operator for the trip, and that it contracted with the bus company in Morocco that provided service to the plaintiff and the others accompanying her on the trip. He attested that the defendant and Recep did not share profits, and that the defendant did not exercise any control over Recep, its employees or any persons who provided services to the plaintiff in Morocco.

[4] The plaintiff submitted to the court an affidavit in which she attested that the defendant gave her a brochure entitled, "General Tours Welcomes You to Morocco," and that she believed, "based on the statements in this brochure, that the tour was being conducted by General Tours and that the tour manager referred to was an agent or employee of General Tours." The plaintiff submitted to the court the defendant's six page brochure, which stated, inter alia, in a section entitled, "Important Phone Numbers," the following: "Recep Tours: Our partner agency in Morocco, they will be happy to assist you since you are traveling with General Tours."

whether the court reached the correct conclusion as a matter of law.

General Statutes § 34-301 (5) defines a "partnership" as "an association of two or more persons to carry on as co-owners a business for profit . . . ." Generally, a mutual agency relationship is an essential element of a partnership. *Travis* v. *St. John*, 176 Conn. 69, 72–73, 404 A.2d 885 (1978). "[A] joint venture . . . exists where two or more parties combine their property, money, efforts, skill or knowledge in some common undertaking . . . . The relationship between contracting parties cannot amount to a joint venture unless the parties so intend [and] . . . joint ventures relate to a single transaction, whereas partnerships exist for a general business." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Yale University*, 252 Conn. 641, 672–73, 748 A.2d 834 (2000). "Ordinarily, an employer of an independent contractor, absent an act of negligence on his own part, is not liable to others for the negligent acts of the contractor." *Ray* v. *Schneider*, 16 Conn. App. 660, 663, 548 A.2d 461, cert. denied, 209 Conn. 822, 551 A.2d 756 (1988).

The factual record before us fails to support the plaintiff's claim that the defendant and Recep engaged in either a partnership or a joint venture. The uncontroverted evidence submitted by the defendant demonstrates that Recep acted as the defendant's independent contractor in Morocco. There is no evidence that any of the defendant's employees took part in the plaintiff's activities in Morocco.

The plaintiff asserts that the defendant's explicit representation of Recep as its "partner agency in Morocco" controls and that the defendant should be estopped from denying liability. We conclude that the defendant is entitled to judgment as a matter of law because the

plaintiff has not set forth facts that reveal the existence of a legally cognizable cause of action in that regard.[5]

The plaintiff argues that her claim should survive the defendant's motion for summary judgment under a partnership by estoppel, apparent agency or agency by estoppel theory.[6] The defendant, citing *Mullen* v.

[5] The defendant, in its brief, correctly points out that the plaintiff failed to allege a partnership by estoppel theory of recovery in her complaint; she used that terminology for the first time in her opposition to the defendant's motion for summary judgment. We have recognized previously that a plaintiff may rely only on the allegations in her complaint. See *Jenkins* v. *Commissioner of Correction*, 52 Conn. App. 385, 406, 726 A.2d 657, cert. denied, 249 Conn. 920, 733 A.2d 233 (1999). "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise." (Internal quotation marks omitted.) *Borkowski* v. *Sacheti*, 43 Conn. App. 294, 320, 682 A.2d 1095, cert. denied, 239 Conn. 945, 686 A.2d 120 (1996). "[A] plaintiff may not allege one cause of action and recover upon another . . . ." (Citation omitted; internal quotation marks omitted.) *Stafford Higgins Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 575, 715 A.2d 46 (1998). "[T]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Internal quotation marks omitted.) *Remington Investments, Inc.* v. *National Properties, Inc.*, 49 Conn. App. 789, 802, 716 A.2d 141 (1998).

The plaintiff submits that this argument is "simply unfair" because the defendant denied a partnership with Recep for the first time in its December, 1998 amended answer. The plaintiff filed its complaint in February, 1997, and the defendant, in its July, 1998 original answer, left the plaintiff to her proof as to the allegation that the defendant engaged in either a partnership or a joint venture with Recep. We note that the plaintiff was free to seek permission to amend her complaint after the defendant filed its amended answer. See Practice Book § 10-60. She did not do so and chose, instead, to raise the issue of estoppel in her opposition to the defendant's summary judgment motion, which she filed six months after the defendant filed its amended answer. We are not persuaded by the plaintiff's argument. We considered the defendant's claim on its merits because the court did base its decision on that ground.

[6] The plaintiff asserts that her claim arises out of 2 Restatement (Second), Torts § 429 (1965), which provides: "One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence

*Horton*, 46 Conn. App. 759, 771, 700 A.2d 1377 (1997), argues that "the doctrine of agency by estoppel, or apparent authority, has never been used to attach tort liability." The doctrine of apparent authority is implicated where a principal "represents that another is his servant or agent and thereby causes a third person to rely justifiably on the care or skill of such agent," and thereby incurs vicarious liability for the harm caused to the third person by the person held out as an agent. Id. As we noted in *Mullen*, that theory is not a viable ground on which to premise liability against a defendant sued for the torts of an alleged agent. Id., 772.

The common-law principle of partnership by estoppel provides that "after the dissolution of a partnership a former partner may be liable to one who has dealt with the partnership if he has received no notice of the dissolution and has given credit to the firm upon the faith of his connection with it. In such case the former partner is estopped to deny his connection with the partnership in favor of one who has dealt with it on the strength of that connection." *Morris* v. *Brown*, 115 Conn. 389, 392, 162 A. 1 (1932). Likewise, "[a] person who holds himself out as a partner, or permits others to do so, is liable as such to third persons who give credit to the firm upon the faith of his connection with it, or who know of such holding out." *United States Wood Preserving Co.* v. *Lawrence*, 89 Conn. 633, 643, 95 A. 8 (1915).

Those principles were codified in General Statutes (Rev. to 1995) § 34-54,[7] which was repealed in 1997.

of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants."

[7] General Statutes (Rev. to 1995) § 34-54 provides in relevant part: "(1) When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation or consented

That statute provided that one who falsely represented that a partnership existed would be liable to third parties who had provided credit to the "apparent" partnership. In the present case, the plaintiff does not allege that she either provided credit to the defendant or that her reliance on the defendant's representation in any way detrimentally harmed a business interest.

Similarly, the plaintiff's reliance on apparent agency or agency by estoppel is not well placed. Those theories are generally discussed in the context of apparent authority. They concern basically "that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses." (Internal quotation marks omitted.) *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 120, 140, 464 A.2d 6 (1983). As we previously stated, the plaintiff has not demonstrated that Recep was, at any time, the defendant's agent.

The plaintiff cites two Superior Court decisions in support of her proposition that her cause of action against the defendant, under a theory of apparent agency, should proceed to trial.[8] We are not persuaded. Those cases, *at most*, permitted causes of action against hospitals for the acts or omissions of independent contractors who were held out by the hospitals to be employees, not partners. We have found no Connecticut authority favoring the plaintiff's proposition that this

to its being made in a public manner he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.

"(a) When a partnership liability results, he is liable as though he were an actual member of the partnership. . . ."

[8] *Wilverding* v. *Ostrowitz*, Superior Court, judicial district of Fairfield, Docket No. 334949 (February 28, 2000) (26 Conn. L. Rptr. 632, 633); *Francisco* v. *Hartford Gynecological Center, Inc.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 513841 (March 1, 1994) (11 Conn. L. Rptr. 191, 192).

same reasoning should apply to the tenuous relationship between a tour operator and an independent contractor that it contracted with to provide services to tourists around the world.

In *Lavine* v. *General Mills, Inc.*, 519 F. Sup. 332 (N.D. Ga. 1981), the United States District Court for the Northern District of Georgia granted the motion for summary judgment filed by the defendants, a travel agency and a tour package planner, after concluding that the plaintiff tourist had failed to set forth facts showing that the defendants could be liable for injuries she sustained while traveling abroad. The plaintiff in *Lavine* had purchased a tour package from the defendants that included an optional cruise to the Fiji Islands. Id., 334. An independent contractor escorted the plaintiff on that excursion. Id., 336. The plaintiff fell on a rock and sustained injuries as she and other tourists went ashore to explore island caves and beaches during one part of that cruise. Id., 334. The District Court concluded that the defendants lacked a sufficient relationship with the cruise operator for the plaintiff to state a cause of action against the defendants for any of the cruise operator's acts or omissions. Id., 335–36. The District Court noted that the defendants' function was only to sell and arrange travel tour packages for those who desired to purchase them. Id., 337. Significantly, the District Court also noted that even if the defendants had acted as the plaintiff's agent during her excursion, there was no conceivable duty on their part that would have permitted the plaintiff to state a cause of action in negligence against them for her injuries. Id., 337–38.

The District Court in *Lavine* further stated that "[t]here is hardly a person living who has not at one time or another slipped upon a rock, and not the slightest claim is made or evidence presented that the defendants caused or in any way contributed to the slip in this case. Not even a railroad, an airline or any other

public carrier is an insurer of the safety of its passengers where its instrumentalities are not defective or its employees are not negligent." Id., 338; see also *Fling* v. *Hollywood Travel & Tours*, 765 F. Sup. 1302, 1308 (N.D. Ohio 1990) (defendant tour operator not held liable for plaintiff tourist's injuries where it did not own, operate or manage hotel where she was robbed during vacation), aff'd, 933 F.2d 1008 (6th Cir. 1991).

Applying those principles to the present case, we conclude that the plaintiff has not set forth facts sufficient to establish an agency relationship between the defendant and Recep that would permit her to hold the defendant liable for the acts or omissions of Recep or its employees. The plaintiff's claim must therefore fail.

### III

The plaintiff next claims that the court improperly determined, as a matter of law, that the defendant's representations to her assuring her a smooth, comfortable and safe trip did not constitute a warranty that the plaintiff would not be injured negligently during her trip. We disagree.

The plaintiff alleged in her complaint that the defendant "explicitly and implicitly represented that it would provide the plaintiff with comfortable and safe accommodations and transportation while in Morocco, and that it had employed a tour manager to escort the plaintiff and others on the tour to 'assure a smooth and comfortable trip.' " In support of her claim, the plaintiff submitted the tour brochure and the personal tour itinerary given to her by the defendant.[9] The plaintiff's claim

[9] The plaintiff refers to specific language in the defendant's brochure stating that "[w]e know that you will enjoy the experience," and "[i]f you are taking one of our escorted tours your professional Tour Manager will meet you upon arrival . . . ." Furthermore, the brochure stated that "[i]t is this Tour Manager's sole responsibility to assure that you have a totally smooth and comfortable trip. They are there to assist you in any way. . . . Your tour manager and local guides will work together in each city to make this trip a unique and enriching experience for every General Tours traveler."

in this regard does not sound in negligent selection;[10] instead, she asserts that the representations contained in those documents constituted a warranty. The court concluded, as a matter of law, that those representations did not guarantee the plaintiff's safety, but appeared "to be mere puffing and advertisement rhetoric, and not a guarantee . . . ."

Although this issue has not been considered by Connecticut courts, courts in several other jurisdictions have not permitted a claimant to rely on general language in tour brochures as a warranty by the tour operator guaranteeing a safe trip free from any adverse occurrences. As one court described it, the "plain trend" reflected in cases dealing with tour operator or travel agent liability disfavors liability regardless of the theory of recovery advanced by plaintiffs. *Lavine* v. *General Mills, Inc.*, supra, 519 F. Sup. 337. For example, the plaintiff in *Wilson* v. *American Trans Air, Inc.*, supra, 874 F.2d 386, brought an action in federal District Court against the defendant tour operator that sponsored a

---

In support of her argument that the defendant implicitly assured her that she would be cared for by the defendant, the plaintiff also refers to the defendant's use of the word "we" in the personal itinerary that was given to her. The plaintiff additionally referred to another document that stated that "[a]t General Tours, we've made a unique commitment to helping ensure your vacation goes as smoothly as possible." The document also stated that the defendant's commitment to tour participants includes access to the "General Assist Network," which would advise tourists about medical facilities and physicians if either should become necessary, and that assistance professionals would "follow through and monitor your condition by checking in regularly with your local doctor and you."

[10] For purposes of clarity, we note that the plaintiff does not claim that the defendant breached a contractual duty to either select competent personnel to assist her on her tour or to arrange for adequate accommodations or the like. Under a claim brought under a negligent selection theory, a principal can be held liable for the torts of an independent contractor "when the consequences of *the principal's own negligent failure to select a competent contractor* caused the harm upon which the suit is based." (Emphasis in original.) *Wilson* v. *American Trans Air, Inc.*, supra, 874 F.2d 389.

trip she had purchased to tour the Cayman Islands. An intruder assaulted the plaintiff in her hotel room during the trip, and she filed a complaint against the defendant on the ground that the language in the defendant's tour brochure obligated the defendant to investigate and warn her of any such potential dangers. The United States Court of Appeals for the Seventh Circuit affirmed the District Court's granting of the defendant's motion for summary judgment. The Seventh Circuit noted that "[t]he brochure language relied upon by the [plaintiff] (focusing on the 'relaxed informality' of a Cayman Island vacation . . .) is mere 'puffing.' The language is not a guarantee of safety, and does not constitute affirmative conduct giving rise to a duty to investigate and warn. Cf. *Lavine* v. *General Mills, Inc.*, [supra, 519 F. Sup. 336 ] ('a general promise that the trip would be "safe and reliable" does not constitute a guarantee that no harm would befall plaintiff')." *Wilson* v. *American Trans Air, Inc.*, supra, 391.

Likewise, in *Passero* v. *DHC Hotels & Resorts, Inc.*, supra, 981 F. Sup. 742, the plaintiff brought an action against the defendant tour operator after she tripped over a flotation mat that had been left near her chair at the hotel swimming pool. The plaintiff relied on language in the defendant's tour brochure in support of her claim that the defendant had warranted that she would not suffer harm during her trip. The District Court concluded that the defendant did not assume "a heightened duty to investigate and warn [because it included] language in its travel brochure that is designed to put the plaintiff's mind at rest. . . . [T]his language does not, and cannot, be read as a guarantee that [the defendant's] on-site representatives will protect plaintiff from injuring herself under all circumstances." Id., 745.

The plaintiff in *Sova* v. *Apple Vacations*, supra, 984 F. Sup. 1137, sustained back injuries during a scuba

diving excursion while on a trip to Cancun, Mexico, that she purchased from the defendant tour operator. She alleged that language in the defendant's travel guide[11] gave rise to an express or implied warranty that she would not have sustained the injury she suffered. Id., 1142. The District Court concluded that those statements could be characterized as " 'puffing,' " and that they did not guarantee that the plaintiff's trip would be free from mishaps. Id., 1143. Importantly, the District Court noted that "[t]he guarantee of satisfaction contained in the brochure contains no statements indicating any intent on defendant's part to accept liability for personal injuries caused by the negligence of independent third parties." Id.

The District Court in *Sova* also referred to the disclaimer contained in the defendant's tour guide as evidence that the defendant did not guarantee the plaintiff protection from any negligent acts of third parties over which the defendant lacked control. Id., 1139; see also *Connolly* v. *Samuelson*, 671 F. Sup. 1312, 1318 (D. Kan. 1987) (summary judgment for defendant tour operator appropriate where "[t]he provisions in the defendants' brochure and deposit receipt exculpating defendants from liability are plain evidence that defendants undertook no warranty or contractual guarantee of plaintiff's safety on her trip"); see also *Tucker* v. *Whitaker Travel, Ltd.*, 620 F. Sup. 578, 586 (E.D. Pa. 1985), aff'd, 800 F.2d 1140 (3d Cir.), cert. denied, 479 U.S. 986, 107 S. Ct. 578, 93 L. Ed. 2d 581 (1986).

Connecticut courts have long recognized, in the context of the sale of goods, the fine distinction between

---

[11] The relevant language in the defendant's travel guide stated: "Apple Vacations has prescreened all tours for quality, safety and your guarantee of satisfaction. . . . Apple Vacations assumes no responsibility for tours purchased through other companies. Secure your optional tours by purchasing through Apple Vacations. We will make sure that your satisfaction is guaranteed and the quality of the product is kept at the highest standards." *Sova* v. *Apple Vacations*, supra, 984 F. Sup. 1142.

advertisement or "puffery" and language that creates a warranty. See *Web Press Services Corp.* v. *New London Motors, Inc.*, 203 Conn. 342, 351–52, 525 A.2d 57, following remand, 205 Conn. 479, 533 A.2d 1211 (1987). "[F]avorable comments by sellers with respect to their products are universally accepted and expected in the market place . . . and do not give rise to liability." (Internal quotation marks omitted.) *Gold* v. *University of Bridgeport School of Law*, 19 Conn. App. 379, 384–85, 562 A.2d 570, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989). In general, a court will be more likely to find the creation of a warranty where a party makes a specific representation rather than a general representation. *Web Press Services Corp.* v. *New London Motors, Inc.*, supra, 352.

Applying those principles to this case, as well as the guidance afforded us by the previously discussed cases, we conclude that the statements in the defendant's brochure failed, as a matter of law, to warrant the plaintiff's safety or that she would receive nonnegligent care during every aspect of her trip. Additionally, the defendant expressly disclaimed liability for any acts beyond its control or by third parties[12] and stated that it operated

[12] Although we do not reach the plaintiff's claim that the defendant's disclaimer was not binding on her, we note the language in the disclaimer as further, though cumulative, evidence that the defendant did not warranty the plaintiff's safety. The disclaimer portion of the brochure, entitled "Responsibility," stated in relevant part: "General Tours (the 'Operator') packages and operates these programs solely as an independent contractor. The tour services described in this brochure, including without limitation transportation, lodging, and sightseeing, are provided by the carrier, hoteliers, and other suppliers that are independent contractors and not agents for employees, partners, or joint venturers of the Operator. The Operator issues tickets, vouchers, and other travel documents for such services merely as an agent for the companies that furnish such services. . . . The Operator is not responsible for any loss of or damage to property or death or injury to persons, resulting from any act or omission of any supplier providing any tour service . . . . The tour participant expressly waives all rights which he or she may have against the Operator in connection with the foregoing."

its tours "solely as an independent contractor." The plaintiff's trip abroad, by its very nature, exposed her to any number of unforeseen conditions and persons. We reiterate that summary judgment is appropriate where there are no genuine issues of material fact. That is the case here. The substance, context and lack of specificity characterizing the defendant's representations do not permit the finding of the existence of a warranty that the plaintiff would not be injured as she alighted from a bus in a desert during her trip to Morocco. The defendant neither guaranteed the plaintiff's safety nor that the independent contractors it hired would warn her of all possible dangers during her tour.

The plaintiff relies heavily on *Stevenson* v. *Four Winds Travel, Inc.*, 462 F.2d 899 (5th Cir. 1972), in support of her argument that the language the defendant used in its brochure constituted a warranty that she would receive nonnegligent care during her trip and that summary judgment is inappropriate in regard to that claim. The plaintiff in *Stevenson,* a member of a tour group, sustained injuries when she slipped and fell on a pier during an excursion in Brazil. Id., 904. She alleged that the defendant tour operator should have warned her of the dangerous condition and should have guarded against it. She claimed that the defendant's representations in its tour brochures guaranteed that she would receive nonnegligent care during her trip.[13]

---

[13] The defendant's brochure in *Stevenson* stated that "Four Winds also guarantees that every tour will be escorted by a qualified professional tour director. Our tour directors have been carefully selected and trained . . . . Your escorts (tour directors) are also informative, they know precisely what you will be seeing and doing every day." (Internal quotation marks omitted.) *Stevenson* v. *Four Winds Travel, Inc.*, supra, 462 F.2d 906. In reference to the tour directors, the brochure stated that "they've been there before." (Internal quotation marks omitted.) Id. The brochure also stated that each tour would be "fully escorted from start to finish," and that "[f]rom the moment you leave until your journey ends, you are cared for by a carefully selected Four Winds Tour escort." (Internal quotation marks omitted.) Id., 906–907.

The United States District Court in *Stevenson* directed a verdict in favor of the defendant on that claim. Id., 904. On appeal, the United States Court of Appeals for the Fifth Circuit reversed the judgment, reasoning that "[t]he representations and statements of Four Winds in the brochure, with respect to the services that would be rendered by [the tour director], were a part of what Four Winds obligated itself to do in the tour contract with Stevenson, and Stevenson had the right to rely thereon and did rely thereon." Id., 906. The Fifth Circuit concluded that the plaintiff "had the right to expect that [her tour director] would warn her of any danger like the slippery condition of the pier walkway and caution her to use extraordinary care to guard against the peril of such a condition." Id., 907.

*Stevenson* is distinguishable from the present case for several reasons. First, the defendant tour operator's representations in that case were more specific than the representations made in the present case. The defendant in *Stevenson* described the "careful selection, training and experience, and the many services" that tour escorts would provide tour participants. Id. Second, the defendant in that case admitted that the tour manager assumed all management of matters pertaining to his tour. Id., 906. Third, the Fifth Circuit concluded in *Stevenson* that the danger encountered by the plaintiff was neither temporary nor unexpected, unlike the allegedly dangerous terrain the plaintiff in the present case encountered when she alighted from the bus during an unscheduled stop along a desert road. For those reasons, the plaintiff's claim must fail.

IV

Finally, the plaintiff claims that the court improperly considered certain hearsay statements in Flynn's affida-

vit in reaching its decision to grant the defendant's motion for summary judgment and that the court's decision should be reversed on that ground. We disagree.

Specifically, the plaintiff claims that Flynn averred that Recep did not own the bus that carried the plaintiff at the time she sustained her injuries and that Recep did not employ the tour manager, baggage handler or bus driver, or exercise any control or authority over those individuals. The plaintiff argues that those representations necessarily could not have come from Flynn's personal knowledge because Flynn denied any connection with Recep. The plaintiff further argues that because those statements constitute inadmissible hearsay, the court improperly relied on them in granting the defendant's summary judgment motion.

Having reviewed the court's memorandum of decision, we conclude that the court did not rely on the statements at issue in Flynn's affidavit when reaching its decision. The court's critical ruling was that the defendant did not bear vicarious liability for Recep or any of its agents or employees. The court noted, with respect to the plaintiff's assertion that a question of fact existed as to whether Recep employed the tour manager, Achmed, that "[e]ven if there was a question of fact as to the relationship between Achmed and Recep, the court finds that such a question would not preclude granting summary judgment in the defendant's favor." Because Flynn's statements are immaterial in regard to the issues we find determinative of the appeal, we need not consider this issue.

The judgment is affirmed.

In this opinion the other judges concurred.