MEMORANDUM OF DECISION ON DEFENDANT’S MOTION TO STRIKE
GUERNSEY, C.J.
This action arises out of a horrific bus accident that took place on March 12, 2011 on Interstate 95 in New York City when a bus owned and operated by tour bus services World Wide Tours of Greater New York, LTD and/or World Wide Travel of Greater NY, LTC departed from the travel lane, impacted with a travel barrier, and subsequently collided with a support pole for an overhead sign, resulting in the *345 deaths of, or serious injury to, the sixteen passengers whose claims are incorporated into this litigation.[1] It is alleged that the MTGA had entered into a partnership or joint venture with the tour bus services and another seller of tour bus tickets, offering certain benefits to encourage the attendance at the Mohegan Sun Casino, and marketed the partnerships as Mohegan Sun Asian Bus Lines, particularly to the Asian community.[2]
Plaintiffs’ 51 count complaint is based on three legal theories, with Counts 1-16 seeking to impose liability on the Mohegan Tribal Gaming Authority pursuant to a theory of partnership or joint venture (with one Count for each Plaintiff). Counts 17-32 are predicated on a theory of partnership or joint venture by estoppel, and Counts 33-51 are based on a variety of claims of negligence. The instant Motion to Strike is addressed only to Counts 17-32, and asserts that, under Connecticut law, partnership or joint venture by estop-pel cannot serve as the basis for imposing vicarious liability in tort, and that under Conn. Gen.Stat. § 34-329 such liability exists only in favor of those who give credit to one who permits others to hold him out as a partner. Davies v. General Tours, Inc., 63 Conn.App. 17, 31-32, 774 A.2d 1063 (2001).
In reply, the Plaintiffs argue that this is a conflict of laws case, and that under a significant contacts analysis (and, of course, under the doctrine of lex loci de-licti ) New York law should be applied to this accident. Simaitis v. Flood, 182 Conn. 24, 33, 437 A.2d 828 (1980). Plaintiffs maintain, without citation to authority, that tort liability may be imposed vicariously under New York law based on partnership or joint venture by estoppel, a position not conceded by the Defendant.
In ruling on a motion to strike a complaint, the Court must construe the complaint most favorably to the Plaintiff. Dodd v. Middlesex Mutual Assurance Co., 242 Conn. 375, 378, 698 A.2d 859 (1997). This has repeatedly been emphasized by the Connecticut Supreme and Appellate Courts:
Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied.... Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged.... It is fundamental that in determining the sufficiency of a complaint challenged by a defendant’s motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted .... Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically. (Internal quotation marks omitted.)
Violano v. Fernandez, 88 Conn.App. 1, 4-5, 868 A.2d 69 (2005), aff'd, 280 Conn. 310, 907 A.2d 1188 (2006). Inasmuch as the issue of what is the law of a foreign (i.e., non-Connecticut) jurisdiction raises an issue of fact,[3] in ruling on the instant motion to strike the viability of such a cause of action under New York law will be taken as admitted.[4]

*346
DISCUSSION

It cannot be doubted that the Connecticut Appellate Court has shown extreme reluctance to recognize the doctrine of apparent authority, of which partnership by estoppel is an example, as a basis for imposing liability for tortious misconduct. Such a claim was summarily dismissed in an action seeking to hold a number of religious institutions liable for damages for sexual contact between a defendant priest/psychologist and a patient receiving pastoral, spiritual and psychological counseling. The Plaintiff argued that the defendants held out the priest/psychologist as a trustworthy, ethical, respectable priest-clinical psychologist on which representation the Plaintiff relied to her detriment. While recognizing that other states have used the doctrine of apparent authority for imposing vicarious liability for harm caused by the lack of care of skill of the servant or agent, the Appellate Court summarily dismissed such a claim, stating, without further explanation, that [i]n Connecticut, however, the doctrine of apparent authority has never been used in such a manner. Mullen v. Horton, 46 Conn.App. 759, 771-72, 700 A.2d 1377 (1997).
A claim of tortious liability based on partnership by estoppel was directly addressed by the Appellate Court in Davies v. General Tours, Inc., supra, where the plaintiff attempted to predicate liability, inter alia, on theories of partnership by estoppel and apparent agency or agency by estoppel. Once again, the Appellate Court was not persuaded, citing Mullen v. Horton, supra, to dispose of the apparent agency or agency by estoppel theory of liability, and limiting the common law principle of partnership by estoppel to situations involving the advancing of credit.[5] Lower court cases imposing liability in cases of apparent agency were distinguished on grounds that the independent contractors were held out to be employees, not partners. Davies v. General Tours, Inc., supra at 32-33, 774 A.2d 1063. The opportunity for proper appellate resolution of these issues presented by the Connecticut Supreme Court’s granting of certification, 256 Conn. 926, 776 A.2d 1143 (2001), was removed by the withdrawal of the appeal on October 18, 2001.
This state of affairs was recently reaffirmed by the Appellate Court when it reversed a finding of vicarious liability by a trial court:
Connecticut, nevertheless, has yet to apply the doctrine of apparent authority to allow for a principal to be held liable to a third person who was harmed by the tortious conduct of a person held out as the principal’s agent.
[[Image here]]
*347 In the present case, the claims against AAMCO sound in tort and are based on the tortious conduct of Drive Train, which the plaintiff alleges AAMCO held out as its agent. Because this court has held that the doctrine of apparent authority cannot be used to hold a principal liable for the tortious actions of its alleged agent, we conclude that the trial court erred in determining that Drive Train had apparent authority to bind AAMCO.
L and V Contractors LLC v. Heritage Warranty Insurance Risk Retention Group, Inc., Et Al., 136 Conn.App. 662, 669-670, 47 A.3d 887 (2012). Therefore, it appears that Connecticut does not recognize the imposition of tort liability by means of apparent authority or partnership by estoppel.
Plaintiffs argue that the Gaming Disputes Court must apply Connecticut choice of law rules, a position not shared by the Defendant, which asserts that the substantive law of the Mohegan Tribe does not include Connecticut choice of law jurisprudence (although it is impossible to determine just what choice of law jurisprudence the Defendant feels should be applied by this Court). In the alternative, the Defendant argues that even if this Court were to do so, Connecticut would have the most significant relationship with this case and therefore Connecticut law would be controlling.
Although even a peremptory reading of MTC § 3-52 fails to raise any objection to using Connecticut choice of law decisional authority,[6] deciding choice of law issues, especially using the significant relationship analysis, has been repeatedly discouraged in the context of a motion to strike. As Judge Cosgrove (a former luminary of the Gaming Disputes Court) has noted:
[CJourts have refused to address choice of law7 issues in a motion to strike because it is premature to conduct the requisite ‘searching case-by-case contextual inquiry into the significance of the interests that the law of competing jurisdictions may assert in the particular controversy.’ O’Connor v. O’Connor, 201 Conn. 632, 658, 519 A.2d 13 (1986).
Financial Consulting, LLC v. Illinois Mutual Life Ins. Co., 2010 WL 4723202 (Cosgrove, J., Conn.Super,, Oct. 28, 2010).
In any event, a choice of law analysis is unnecessary in ruling on the instant motion to strike. Assuming that New7 York has the most significant relationship to this case, Counts 17-32 set forth a cause of action which is, for purposes of this motion, recognized under New York law but not under Connecticut law. Absent a waiver of sovereign immunity applicable to Counts 17-32, the claims set forth therein are barred. The issue is therefore whether the limited waiver of sovereign immunity set forth in The Mohegan Torts Code, MTC § 3-250 for persons with tort claims arising under this Code (a phrase left undefined) applies to causes of action sounding in tort not recognized under Connecticut law.[7]
*348 Defendant’s argument that the phrase persons with tort claims under this Code does not include those with tort claims arising under Connecticut common law is misplaced, at least as far as negligence claims arising under Connecticut common law. While tort liability may arise from both contract and statute,[8] an overwhelming number of negligence cases brought to this Court and elsewhere involve claims of common law negligence, as do Counts 33-51 in the instant case (which claims have not been challenged). Defendant’s assertion,[9] if correct, would bar these common law negligence claims, render meaningless The Mohegan Torts Code, and place the MTGA in violation of the Tribal-State Gaming Compact,[10] all at the same time.
This Court has consistently and repeatedly looked to Connecticut common law to establish the existence and necessary components of tort claims brought under The Mohegan Torts Code.[11] The provision in MTC § 3-250(f) that [n]othing herein shall be construed as a waiver of either The Mohegan Tribe or The Mohegan Tribal Gaming Authority of its sovereign immunity as to claims arising under any Connecticut General Statute [12] or arising under Connecticut common law must be read in conjunction with clear, unequivocal waivers of sovereign immunity for persons with tort claims arising under this Code set forth in MTC § 3-250(a) and (b) and the requirements of § 3(g) to the Tribal-State Gaming Compact, with the obvious intention that these limited waivers of sovereign immunity apply only to tort claims.
The Gaming Disputes Court of Appeals has had occasion to explore the history and purpose of The Mohegan Torts Code in Lubrano, Et Al. v. Brennan Beer Gorman/Architects, LLP, Et Al., 1 G.D.A.P. 48, 54, 7 Am. Tribal Law 369 (2008), tracing its development from the Tribal—State *349 Gaming Compact’s requirement that The Mohegan Tribe establish reasonable procedures for the disposition of tort claims arising from the alleged injuries to patrons of its gaming facilities[13] through the various incarnations of the Torts Code.[14] The current version of the Torts Code specifies the procedure to be followed by [a]ny person, who, wherever located, sustains an injury as defined in this Code that arises from or out of the Gaming Facilities or that is allegedly caused directly or indirectly by acts or omissions of the MTGA (or its authorized representatives) ... The definition of injury to which this refers is as follows:
Injury means the invasion of any legally protected interest of a person or a loss of any kind to a person.
MTC § 3-245. In interpreting the meaning of what constitutes such an injury, not further defined by any Mohegan Tribal ordinances or regulations, MTC § 3-52(a)(1), this Court is directed to turn to the Connecticut General Statutes, MTC § 3-52(a)(2), and the common law of the State of Connecticut. MTC § 3—52(a)(3). As discussed earlier, Connecticut common law, as developed by the Connecticut Appellate Court, does not recognize the causes of action set forth in Counts 17-32.[15] Plaintiff has not directed this Court to any authority wherein choice of law rules have resulted in the imposition of tortious liability on a Connecticut entity based on partnership by estoppel.[16]
In light of the history and purpose of The Mohegan Torts Code, and the provisions of § 3(g) of the Tribal-State Gaming Compact that [t]he Tribe shall not be deemed to have waived its sovereign immunity from suit with respect to such claims by virtue of any provision of this Compact, in order for this Court to extend the limited waiver of sovereign immunity set forth in MTC § 3-250 to tort claims not recognized under Connecticut common law, there must be identified a clear, unequivocal waiver of the sovereign immunity of The Mohegan Tribe. Long v. Mohegan Tribal Gaming Authority, Et Al., 1 G.D.R, 5, 9, 1 Am. Tribal Law 385 (1997). This Court is unable to find any intention, let alone one clearly and unequivocally expressed, to expand the meaning of persons with tort claims under this Code to include those with tort claims not recognized under Connecticut law.
Defendant’s Motion to Strike is Granted.

. Although the parties consistently refer to seventeen Plaintiffs, two of them are co-administrators.

. Plaintiff’s Complaint, Count One, Paragraph ; 28.

. See TAIT'S HANDBOOK OF CONNECTICUT EVIDENCE, 4th Ed., § 2.16.3.

.A perusing of New York case law suggests that Plaintiffs are correct in asserting that partnership by estoppel may indeed be used to establish vicarious tort liability. See Cavezza, Et al. v. Gardner, Et Al., 575 N.Y.S.2d 525, 176 A.D.2d 911 (1991). But compare the provisions of Conn. Gen.Stat. § 34-329 with the provisions of McKinney’s Partnership Law §§ 24, 27 and 28. It would appear that *346 New York courts have interpreted such liability more broadly than the Connecticut Appellate Court.

. This involved a quite literal reading of Conn. Gen.Stat. § 34-54, repealed in 1997. In the instant case, neither Plaintiffs nor Defendant have considered the language of Conn. Gen.Stat. § 34-329, Liability of Purported Partner, which deals with the liability of one who by words or conduct, purports to be a partner or consents to being represented by another as a partner to one who enters into a transaction with the actual or purported partnership. The Davies decision similarly did not consider this statute, effective July 1, 1997 (the accident in that case took place in January, 1995), which might have made for an interesting analysis of public policy on this issue even if not controlling in that case. Indeed, Judge Hodgson has held that [vjicarious liability for the torts arising from a transaction with an alleged partnership is imposed on purported partners as a matter of public policy reflected in a legislative enactment, Conn. Gen.Stat. § 34-329(a). Palmer v. Claydon, 25 Conn. L. Rptr. 580, 1999 WL 817949 (Conn.Super. Sept. 23, 1999).

. This Court has long been aware that the literal wording of MTC § 3—52(a)(3) could be read so as to restrict the recognition of Connecticut common law solely to decisional law interpreting the General Statutes, a stricture that has been ignored by the Defendant (as well as Plaintiffs) in virtually every negligence case argued in this Court. See Drysdale v. MTGA, 2 G.D.R. 17, 18 n. 5, 4 Am. Tribal Law 562 (2003).

. Although this analysis approaches the argument raised by the Defendant, it should be emphasized that the issue of choice of law is independent from the issues of sovereign immunity and/or the waiver thereof, which must be addressed in every action against The Mohegan Tribe or its entities.

. See, generally, Wright, CONNECTICUT LAW OF TORTS, 3rd Ed., Chapter 3. It should be noted that statutory torts against Tribal entities are barred by the sovereign immunity of The Mohegan Tribe unless the cause of action falls within a waiver of sovereign immunity. MTC § 3—250(f)-

. First, the MTGA has not expressly waived its sovereign immunity to claims arising under Connecticut common law. See M.T.C. § 3-52(a)(3). Thus, it may not be sued for claims arising under Connecticut common law (or, for that matter, New York common law). Defendant’s Reply to Objection to Motion to Strike, at 5.

. See Lubrano, Et Al. v. Brennan Beer Gorman/Architects, LLP, Et Al., 1 G.D.A.P. 48, 54, 7 Am. Tribal Law 369 (2008) (The Mohegan Torts Code was enacted to comply with the requirement of § 3(g) of the Tribal—State Gaming Compact that the Tribe establish reasonable procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities).

. See, e.g., Alday v. Mohegan Tribal Gaming Authority, 1 G.D.A.P. 25, 6 Am. Tribal Law 476 (2005) (examining the specific defect rule as established under Connecticut common, not statutory, law); Miller v. Mohegan Tribal Gaming Authority, 1 G.D.A.P. 39, 6 Am. Tribal Law 487 (2006) (interpreting the common law development of the law of spoliation of evidence);

. Even prior to the amendment of the Torts Code, it had been clear that provisions in Connecticut statutes or decisions of the Connecticut Supreme Court cannot serve as the basis for finding a waiver of the sovereign immunity of The Mohegan Tribe. See Mac-Lean v. Office of the Director of Regulation, 1 G.D.A.P. 20, 22, 5 Am. Tribal Law 273 (2004). As Judge Wilson noted, the United States Supreme Court has held that tribal immunity is a matter of federal law and is not subject to diminution by the States. Lopez v. Mohegan Tribal Gaming Authority, 4 G.D.R. 96, 98, 9 Am. Tribal Law 170 (2010) quoting Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 756, 118 S.Ct. 1700, 140 L.Ed.2d 981, (1998).

. Tribal—State Gaming Compact § 3(g).

. MTO 2001-07, the version of the Torts Code at issue in Lubrano, specifically referred to the Gaming Compact in its statement of purpose:
Section 4: Purpose
[[Image here]]
B. The Mohegan Tribe and the State of Connecticut entered into a Gaming Compact dated April 25, 1994. The Gaming Compact provides, among other things, that The Mohegan Tribe shall establish reasonable procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities.
MTO 2001-07 § 4.

. The instant case is a clear example of the situation described in Comment on Sec. (2) to Restatement 2d, Conflicts, § 6: c. Rationale. Legislatures usually legislate, and courts usually adjudicate, only with the local situation in mind....

. The Comments to the Restatement 2d, Conflicts recognize that it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state. Comment (g).