GUERNSEY, Chief Justice.
The Plaintiffs have appealed the decision of the Gaming Disputes Trial Court, Wilson, J., granting the Motion to Dismiss filed by the Defendant Lehr Associates Consulting Engineers, LLP [1] on grounds that the instant action was not timely filed under Mohegan Torts Code,[2] and that the Gaming Disputes Court is therefore without jurisdiction pursuant to the Tort Code’s statute of limitations, MTC § 3-246. Because we hold that the Mohegan Torts Code has no applicability to tort *371 claims against non-Tribal entities, we reverse and remand for further proceedings.

Procedural History

By complaint filed with the Gaming Disputes Trial Court on March 9, 2005, the Plaintiffs commenced suit against six non-Tribal Defendants, seeking damages for catastrophic injuries suffered by the Plaintiff Joseph Lubrano, an employee of the “Mohegan Sun”,[3] on June 15, 2004 as the result of a fall in the “Race Book” section of Mohegan Sun Casino during the course of his employment. Neither the Mohegan Tribe nor the Mohegan Tribal Gaming Authority (MTGA) is named as a Defendant, and the only involvement of any Tribal entity in this case is that of the MTGA as an intervening Plaintiff seeking to recover worker’s compensation benefits paid to or on behalf of Mr. Lubrano.
The original complaint, although not specifying the law to be applied, contained the perplexing allegation that “[pjursuant to Section 3 of the Mohegan Torts Code, Ordinance 2001-07, the Mohegan Tribal Gaming Authority has jurisdiction over this action.”[4] The ad damnum claimed “[f]air, just and reasonable damages”, and the Statement of Claim asserted that “[t]he plaintiffs claim damages to the maximum extent allowed pursuant to the Mohegan Tort Code or other applicable tort law.”[5] The involvement of the Mohegan Torts Code, which had never before been held to apply to tort claims against non-Tribal entities, took on a life of its own commencing with a Motion for Summary Judgment filed by the Defendants The Tucker Company, Tucker Mechanical, and Emcor Group, Inc. (collectively hereinafter “Tucker Mechanical”) asserting that Mohegan Tribal Law was silent on the issue of a statute of repose, and therefore the action was time-barred under Conn. Gen. Stat. § 52-584.[6] The motion asserted that it was undisputed that Tucker Mechanical substantially completed its work on the Race Book section in September, 1998, and that there is no allegation that Tucker Mechanical served as architect, professional engineer, or land surveyor, thus avoiding the seven year statute of limitations set forth in Conn. Gen.Stat. § 52-584a. In response, the Plaintiffs asserted that MTO 95-4 “demands” the application of MTO 2001-07 (and its statute of limitations, under which a cause of action accrues when the injury is sustained) when the Connecticut General Statutes are in conflict with Mohegan Tribal Law,[7] thus begging the question of whether any such conflict exists, given that MTO 2001-07 had never before been held to have any applicability to tort claims against non-Tribal entities.
*372 In its decision denying Tucker Mechanical’s Motion for Summary Judgment, the Gaming Disputes Trial Court, noting that the case was brought under the Mohegan Torts Code, assumed the applicability of the Torts Code for purposes of Tucker Mechanical’s motion,[8] and went on to hold that the applicable law to be applied by the Gaming Disputes Court pursuant to MTO 95-4 was not the Connecticut statute of limitations, Conn. Gen.Stat. § 52-584, but rather the time limitations imposed under the Mohegan Torts Code, MTC § 3-246(a). In the context of this case, the difference was significant: whereas Conn. Gen.Stat. § 52-584, contains a statute of repose, MTC § 3-246(a) does not.[9] Accordingly, the Motion for Summary Judgment was denied and Tucker Mechanical appealed.[10]
In view of the seriousness of the issues presented, both to the numerous parties to the instant case and to the development of Mohegan Law, pursuant to Rule 1(b) of the Gaming Disputes Court Rules of Appellate Procedure and Section 60-05 of the Connecticut Rules of Appellate Procedure, on June 27, 2007 this Court ordered that the matter be remanded to the Trial Court for articulation as to “[w]hether the Mohegan Torts Code has any applicability to tort claims brought against non-Tribal entities.” In reaffirming its holding that the Mohegan Torts Code was applicable to the instant action against non-Tribal entities, the Gaming Disputes Trial Court first looked to the Mohegan Torts Code definition of “Mohegan Tribal Entity”, finding no allegation that any of the Defendants were within this definition. The Trial Court next determined that the Gaming Disputes Court had jurisdiction over the non-Tribal entities pursuant to the Ordinance Establishing the Gaming Disputes Court, MTO 95-4, now MTC § 3-21 et sec/., succinctly and accurately analyzing the issue under Article XIII of the Constitution of the Mohegan Tribe of Indians.
The Trial Court then examined the provisions of MTC § 3-52, Sources of Tribal Law, emphasizing that Mohegan Tribal Ordinances are “primary”. Turning to the Mohegan Torts Code, the Court observed that the purpose of the Code is set forth as follows:
Sec. 3-244. Purpose.
The Mohegan Tribe of Indians of Connecticut, a federally-recognized sovereign Indian tribal nation occupying the Mohegan Reservation on land held in trust by the Unites States in Uncasville, Connecticut, intends this Code to govern the adjudication of torts from actions of The Mohegan Tribe of Indians of Connecticut and from actions of the Mohegan Tribal Gaming Authority, and their subordinate entities and their respective authorized officials, agents, employees and representatives while engaged with *373 in the scope of their authority or employment on behalf of such entities, wherever located, (emphasis added)[11]
In the view of the Trial Court, because this statement of purpose does not exclude application of the Torts Code to entities nowhere mentioned in the statement of purpose [12], and for other reasons hereinafter discussed in detail, including the Trial Court’s respect for the direction to the Gaming Disputes Court to develop the Tribe’s common law “to achieve stability, clarity, equity, commercial reasonableness, and fidelity to any applicable Mohegan Tribal ordinances or regulations,” MTC § 3-54, the Trial Court held that the provisions of the Mohegan Torts Code govern tort actions against non-Tribal entities.

The Instant Appeal

The jurisdiction of the Gaming Disputes Court over the non-Tribal parties to this action (except to the extent that subject matter jurisdiction may be impacted by the statute of limitations in the Torts Code) has not been questioned. As the legislative history to the Mohegan Nation of Connecticut Land Claims Settlement Act of 1994 states:
The Mohegan Indian Nation will retain exclusive civil jurisdiction within the boundaries of its reservation, and will have concurrent criminal jurisdiction, on tribal lands and over tribal members, with the State of Connecticut. Under this legislation, the Mohegan Indian Nation retains all its sovereign lights as a Federally recognized Indian tribe.
H.R. Rep. 03-676 at 10-11.[13] Given the contractual relationship between the Mohegan Tribe (through the MTGA) and the non-Tribal parties, as well as the direct relationship between the on-Reservation conduct of the parties and the health and welfare of the Tribe, the exercise of civil jurisdiction over the non-Tribal parties [14] *374 lies well within the inherent sovereignty of the Tribe. Montana v. United States, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), reh. den. 452 U.S. 911, 101 S.Ct. 3042, 69 L.Ed.2d 414.
Unlike Tucker Mechanical, which argued for the application of the Connecticut statute of limitations,[15] the Appellee in the instant case, Lehr Associated Consulting Engineers, LLP (hereinafter “Lehr”) moved for summary judgment on grounds that the action against it was not timely filed under MTC § 3-246, and argued in favor of the application of the Mohegan Torts Code to the instant action. As the Trial Court noted, both the Plaintiffs and Lehr, in their briefs and arguments, assumed the applicability of the Mohegan Torts Code. Consistent with its decision on the Tucker Mechanical motion, the Trial Court held that the Tort Code’s time limitations were controlling, and that the action against Lehr was not timely filed.[16]
The Plaintiffs have appealed the granting of Lehr’s Motion to Dismiss.[17] At oral argument, counsel for the Plaintiffs declined to take a position as to whether the Mohegan Torts Code was controlling, whereas counsel for Lehr argued strongly that it was.

Discussion

The Mohegan Tribe—State of Connecticut Gaming Compact (hereafter “Tribal— State Gaming Compact”), entered into by and between the Mohegan Tribe of Indians and the State of Connecticut, executed on May 17, 1994 and approved by the Department of the Interior on December 5, 1994, contained the following requirement for the handling of tort claims arising out of injuries to patrons:
(g) Tort remedies for patrons. The Tribe shall establish, prior to the commencement of class III gaming, reasonable procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities. The
*375 Tribe shall not be deemed to have waived its sovereign immunity from suit with respect to such claims by virtue of any provision of this Compact, but may adopt a remedial system analogous to that available for similar claims arising against the State or such other remedial system as may be appropriate following consultation with the State gaming agency.
Tribal—State Gaming Compact, Sec. 3(g).
Although the Mohegan Tribe declined to follow the example of the Claims Commissioner for the State of Connecticut, as suggested by the Tribal—State Gaming Compact, the direction to establish “reasonable procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities” led to the enactment of MTO 96-2, “An Ordinance Establishing the Mohegan Torts Code”. The clear intention of both the Tribal-State Gaming Compact and MTO 96-2 was to provide a mechanism for the assertion of claims otherwise barred by the sovereign immunity of the Mohegan Tribe.[18] This was accomplished by the limited waiver of sovereign immunity contained in MTO 96-2 § 3.[19] The application of Connecticut law to tort claims against the MTGA was also established by MTO 96-2 § 11, which provided that “any claim brought under this ordinance shall be determined by the Gaming Disputes Court in accordance with Tribal Ordinance 95-7/20-1."[20]
In March, 1998, the Mohegan Torts Code was amended by the passage of MTO 98-1, which maintained the focus of the original Torts Code as a limited waiver of sovereign immunity for damage claims for injuries proximately caused by the negligence of the MTGA, the condition of property of the MTGA, and negligent acts or omissions of tribal security officers. MTO 98-1 § 3(c). The version of the Mohegan Torts Code at issue in the instant case, enacted as MTO 2001-07 (effective August 15, 2001), contained a substantial revision to the Code, extending the limited waiver of sovereign immunity to “persons with tort claims arising in, on or upon the Gaming Facilities”[21] but clearly provided that its purpose was to carry out the mandate of the Tribal—State Compact relating to the providing of procedures for disposing of tort claims by patrons:

SECTION 4: PURPOSE

*376 B. The Mohegan Tribe and the State of Connecticut entered into a Gaming Compact dated April 25, 1994. The Gaming Compact provides, among other things, that the Mohegan Tribe shall establish reasonable procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities.
C. Pursuant to the aforementioned provision of the Gaming Compact, the Mohegan Tribe and the MTGA have adopted and hereby amend procedures applicable to tort claims, as defined in this Code, that may arise in connection with any gaming activities or with any associated hotel, resort or entertainment facilities operated or controlled by the MTGA located on the Mohegan Reservation as more fully defined hereinafter. This Code applies to any and all tort claims arising on the Mohegan Reservation that may be brought against, the MTGA and its employees, by patrons, invitees, guests and other persons who have a valid and legitimate reason to be on the Reservation or within the Mohegan Tribe’s gaming, hotel, resort or entertainment facilities.
D. This Code is expressly intended by the Mohegan Tribe and the MTGA to constitute the exclusive means of adjudication of claims brought against the MTGA and its employees, by patrons, invitees, guests and other persons and the Mohegan Tribe and the MTGA expressly withhold their consent to suit in any forum other than the Gaming Disputes Court established pursuant to Mohegan Tribal Ordinance 95-4 for such actions.
MTO 2001-07 § 4 (emphasis added).
That the purpose of the Torts Code was to comply with the mandate of the Tribal-State Gaming Compact is further emphasized by the language of Resolution No.2001-10 of the Management Board of the Mohegan Tribal Gaming Authority adopting MTO 2001-07, the preamble of which provided:
WHEREAS, the Mohegan Tribe and the State of Connecticut entered into a Gaming Compact dated April 25, 1994 which provides, among other things, that the Mohegan Tribe shall establish reasonable procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities
If there were any doubt as to the purpose of the Torts Code, the 2005 revision made it crystal clear that the Mohegan Tribe intended the Torts Code “to govern the adjudication of torts from actions of the Mohegan Tribe of Indians of Connecticut and from actions of the Mohegan Tribal Gaming Authority, and their subordinate entities and their respective authorized officials, agents, employees and representatives ...” MTO 2005-02 § 4.
Central to the Trial Court’s analysis of the applicability of the Torts Code to claims against non-Tribal defendants is its interpretation of the provisions of MTC § 3-248, which sets forth the procedure for the assertion of tort claims under the Torts Ordinance, as establishing two separate, distinct categories of disputes that may be filed in the Gaming Disputes Court:
Section 3-248. Procedure.
(a) Any person who, wherever located, sustains an injury as defined in this Code that arises from or out of the Gaming Facilities or that is allegedly caused directly or indirectly by acts or omissions of the MTGA (or its authorized representatives), and who seeks recovery from the MTGA for such alleged injury, may file a Complaint with the Gaming Disputes Trial Court, together with the required filing fee, pursuant to *377 the Rules of Procedure of the Gaming Disputes Court,
MTC § 3-248(a).
This language, however, does not appear in MTO 2001-07, but was rather introduced by the 2005 revision enacted by MTO 2005-02. The operative language of MTO 2001-07, controlling in this case, is even more direct and clear:
Section 8: Procedure.
A. Any person who sustains an injury as defined in this Code and who seeks to recover for said injury from the MTGA shall file a Complaint with the Gaming Disputes Trial Court, together with the required filing fee.
MTO 2007-01 § 8(A).
The requirement in this earlier, controlling provision that any person seeking to recover under the Torts Code have both: 1) sustained an injury as defined in the Code; and 2) seek to recover from the MTGA is beyond question. As for the Trial Court’s conclusion that, under Section 3-248(a), the bringing of a claim for an injury “that arises from or out of the Gaming Facilities” does not require that the injured party seek to recover from the MTGA for such alleged injury, we cannot agree. Not only would such an interpretation constitute a major departure from the historical function of the Torts Code, but the same is also grammatically indefensible. The modifying phrase “and who seeks recovery from the MTGA for such alleged injury” clearly modifies the compound clause “that arises from or out of the Gaming Facilities or that is allegedly caused directly or indirectly by acts or omissions of the MTGA (or its authorized representatives)”; given that this is a compound clause (rather than two independent clauses), there is simply no basis for interpreting the modifying phrase as applying only to the first clause. We hold that the 2005 revision to the Torts Code did not alter the dual requirements of an injury as defined in the Code and a claim against the MTGA.
The Trial Court was correct, however, in noting that the provisions of MTC § 3-250(d), that “limitations upon recovery against the sovereign tribal entities and representatives as set forth herein shall not apply to limit recovery against a defendant that is not a Mohegan Tribal Entity or its authorized representative”, are unnecessary if the Torts Code does not apply to claims against non-Tribal defendants. Once again, this provision, however, does not appear in MTO 2001-07 but rather was added by the 2005 revision, MTO 2005-02. Nevertheless, its purpose is readily understood in the context of tort litigation in the Gaming Disputes Court, where it is not at all unusual to find the MTGA and non-Tribal entities as co-defendants. This section merely reinforces that different law applies to claims arising out of the same transaction depending on whether the defendant is a Tribal or non-Tribal entity (that is, whether cloaked with sovereign immunity or not).
The Trial Court correctly noted that one of the mandates imposed on the Gaming Disputes Court is to “strive to achieve stability, clarity, equity, commercial reasonableness, and fidelity to any applicable Mohegan Tribal ordinances or regulations”. MTC § 3-54. Nevertheless, we are unable to identify any intention on the part of Mohegan Tribal Ordinances or regulations to treat non-Tribal entities the same as Tribal entities cloaked with sovereign immunity. In litigation in the Gaming Disputes Court, for example, actions against the Mohegan Tribe or the Mohegan Tribal Gaming Authority are subject to very different rules than those against non-Tribal entities:
Sec. 3-132. [General Rules.]
*378 (a) In any action otherwise authorized against The Mohegan Tribe or its subdivisions, the following modifications to the rules or procedures set forth in this Article shall apply:
(1) The periods of time specified for civil cases or appeals of a civil nature in which an answer, reply, or other pleading or response of any kind due from The Tribe shall be required shall be double the period otherwise specified.
(2) The Mohegan Tribe or Tribal Gaming Authority when a party to a civil action shall not be liable for the payment of the costs, expenses, or attorney’s fees of the opposing party.
(3) The Mohegan Tribe or Tribal Gaming Authority when a party to a civil action shall not be required to post security by bond or otherwise for any purpose.
(4) No action otherwise authorized may be instituted against The Mohegan Tribe or Tribal Gaming Authority unless there is filed with the complaint a cash or written bond or undertaking with at least two (2) sufficient sureties subject to the jurisdiction of the Court in the amount of $500.00, conditioned for the payment of such costs, charges, and reasonable attorney’s fees to be fixed by the Court as may be awarded against the plaintiff in said action, should the plaintiff not prevail in such action.
MTC § 3-131.
Furthermore, there is the overriding concern that the adoption of the Torts Code as controlling in tort actions against non-Tribal entities would result in the stripping away of rights that patrons and others have against other patrons and non-Tribal entities, without the Tribal Council having enacted legislation evidencing any intention to do so. For instance, a patron injured in an assault by another patron, under State law would have a three year statute of limitations for the bringing of an action for damages; a patron injured in the parking lot by the negligent driving of another patron would have two years. To reduce all such statutes of limitation to the period of time in which an action can be filed against the MTGA is not only inconsistent with the admittedly disparate treatment of Tribal and non-Tribal entities, but also would intrude upon the legislative authority of the Tribal Council.[22] This we decline to do.
We hold that the Mohegan Torts Code has been, and continues to be, a limited waiver of sovereign immunity allowing the advancing of tort claims against the MTGA (and, in current form, against the Mohegan Tribe in non-gaming situations) in accordance with the mandate of the Tribal—State Gaming Compact, and that it has no applicability to tort claims against non-Tribal entities. Accordingly, tort claims against the non-Tribal defendants in the instant case remain subject to State law statutes of limitations.[23]
*379 The decision of the Gaming Disputes Trial Court granting Lehr’s Motion for Summary Judgment and/or Motion to Dismiss is reversed, and the case remanded for further proceedings consistent with this opinion.

. The Plaintiffs' original complaint dated March 9, 2005 mistakenly named as a Defendant "Frank Lehr Associates". By motion dated June 16, 2005, the Plaintiffs gave notice of this misjoinder, and were allowed to add Lehr Associates Consulting Engineers, LLP as a party Defendant, subsequently withdrawing the complaint against the original Lehr firm and setting the stage for an extended legal debate as to whether G.D.C.P. § 13 and Conn. Gen.Stat. § 52-593 permit the bringing of an action outside the time limitations of MTO 2001-07. In light of our holding that the provisions of the Mohegan Torts Code have no applicability to tort claims against non-Tribal defendants, we need not address this issue.

. The version of the Mohegan Torts Code in effect at the time of the accrual of Plaintiffs’ cause of action was MTO 2001-07, amended as of June 22, 2005 by MTO 2005-02, and again amended by Res.2007-09 as of February 2, 2007. The present codification of the Mohegan Tribe Code cites the Mohegan Torts Code as MTC § 3-241, et seq.

. Although designated in the complaint as an employee of the Mohegan Sun, the proper designation of the employer is the Mohegan Tribal Gaming Authority.

. Plaintiffs’ Complaint, March 9, 2005, Paragraph 1. The Mohegan Tribal Gaming Authority, obviously, has no jurisdiction over the Gaming Disputes Court or claims filed therein.

. The Revised Complaint dated June 16, 2005 repeated these allegations.

. Conn. Gen.Stat. § 52-584, applicable to actions based on “negligence, misconduct or malpractice”, provides that no such action "shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of ...”

.That Connecticut General Statutes in conflict with Mohegan Tribal Law are not incorporated pursuant to MTO 95-4 is a basic principle of Mohegan Tribal Law. MacLean v. Office of the Director of Regulation, 1 G.D.A.P. 20 (2004).

. Memorandum of Decision, April 12, 2007, fn. 1.

. Conn. Gen.Stat. § 52-584 contains both a statute of limitations for actions sounding in negligence of two years from the date the injury is sustained or discovered or in the exercise of reasonable care should have been discovered, and a statute of repose, providing that ‘‘no such action may be brought more than three years from the date of the act or omission complained of ...” As will be discussed more fully, MTC § 3-246(a) does not contain a statute of repose, and the applicable period (then 270 days) begins to run on the date the injury is sustained. In this case, where years elapsed between the "act or omission complained of” and the injury to the Plaintiff, under Conn. Gen.Stat. § 52-584 the action would be time-barred, but not under MTC § 3-246(a).

.Tucker Mechanical later argued that it had actually filed a Notice of Intent to Appeal, thus avoiding the prohibition against appealing the denial of a motion for summary judgment. Breen v. Phelps, 186 Conn. 86, 90, 439 A.2d 1066 (1982).

. This language, quoted by the Trial Court, was actually introduced by the revision of the Torts Code effective June 22, 2005, MTO 2005-02 § 4, and is therefore not part of the Torts Code applicable to this case. The statement of purpose in MTO 2001-07 is set forth elsewhere in this opinion.

. At oral argument counsel for Lehr introduced for the first time the argument that "their subordinate entities’’ could be read to include non-tribal entities. There is no apparent support for this position, which contrasts with the customary usage of the term in Mohegan ordinances. For example, the Mohegan Tribal Discriminatory Employment Practices Ordinance defines “Mohegan Tribe or Tribe” as the Mohegan Tribe “and its entities, agencies and instrumentalities, including but not limited to Limited Liability Companies.” MTC § 4-23.

. This language also appears in the Senate Report, S. Rep. 103-339, but does not appear in the actual Mohegan Nation of Connecticut Land Claims Settlement Act of 1994, enacted as Public Law 103-377.

. As for the exercise by this Court of civil jurisdiction over non-Indians, the provisions of MTO 95-4, enacted pursuant to Article XIII of the Constitution of the Mohegan Tribe of Indians, provides as follows:
Sec. 3-71. Personal Jurisdiction.
(a) Personal jurisdiction of the Gaming Disputes Court shall be as follows:
(1) As used in these jurisdictional provisions, the word "person” shall be as defined in the General Statutes of Connecticut.
(2) Subject to any contrary provisions, exceptions or limitations contained in Mohegan Tribal or federal law, the courts established by this Article shall have civil jurisdiction over the following persons:
i. Any person residing, located, or present within The Mohegan Reservation; or
ii. Any person who transacts, conducts, or performs any business or activity within or affecting The Mohegan Reservation, either in person or by an agent or representative for any civil cause of action arising out of that transaction, conduct, business, or activity; or
iii. Any person who owns, uses or possesses any property, including any lease, or *374 sublease, within The Mohegan Reservation; or
iv. Any person who engages in negligent or tortious conduct within The Mohegan Reservation either in person or by an agent or representative; or
v. Any person who initiates or files with the Trial Court any civil cause of action, whether in person or through an attorney, for any counterclaim, cross-claim, or any other affirmative pleading for relief which may be asserted within that same action; or
vi. Any person entering upon the Reservation for the purpose of participating in lawful gaming activities, which entry and participation is deemed to be consent to the exercise of jurisdiction by The Tribe over such persons in any civil action to enforce obligations arising from any transaction which arises within the Reservation.
(3) The foregoing bases of jurisdiction are not exclusive.
(Ord. No. 95-4, § 400, 7-20-1995)

. Inasmuch as there was no allegation that Tucker Mechanical served as an architect or professional engineer, it was not concerned with the extended seven year statute of limitations contained in Conn. Gen.Stat. § 52-584a, but rather would benefit from the statute of repose contained in Conn. Gen.Stat. § 52-584. Lehr Associates Consulting Engineers, LLP, on the other hand, arguably would be subject to § 52-584a if state law were applicable.

. The Trial Court rejected the Plaintiffs’ argument that G.D.C.P, § 13 and Conn. Gen. Stat. § 52-593 would save the action against Lehr, based on the bringing of a timely action against the wrong Defendant. Once again, in view of our holding that the Mohegan Torts Code has no applicability to tort claims against non-Tribal entities, we need not address this issue.

. Lehr’s Motion was entitled "Motion for Summary Judgment and/or Motion to Dismiss’’; in light of the Trial Court’s view of the applicability of the Mohegan Torts Code, it concluded that it was without jurisdiction, and granted the Motion to Dismiss.

. There would be no need for Sec. 3(g) if the claim was against a non-Tribal entity without sovereign immunity.

. Section 3(b) required that the Mohegan Tribal Gaming Authority (MTGA) be sued solely in the Mohegan Tribal Gaming Disputes Court. Section 3(c) waived the sovereign immunity of the MTGA for instances involving injuries proximately caused by the negligent acts or omissions of the MTGA, the condition of any property of the MTGA provided it was in a "dangerous condition”, and the negligent acts or omissions of tribal security officers. Section 4 established limitations on awards. “Dangerous Condition”, as defined in MTO 96-2, relates solely to conditions “proximately caused by the negligent acts or omissions of the Mohegan Tribal Gaming Authority in constructing or maintaining such facility.” MTO 96-2 § 2(g). There is no suggestion that the negligent acts of non-Tribal entities are in any way governed by the ordinance.

. The actual reference was intended to be to Resolution 95-7/20-01, which adopted the Ordinance more commonly known as MTO 95-4; this Ordinance, together with Article XIII of the Constitution of the Mohegan Tribe of Indians, established the Gaming Disputes Court.

. As noted, the previous versions of the Torts Code did not apply to torts generally, but rather only to negligent acts or omissions of the MTGA, tribal security officers, and dangerous conditions of MTGA property.

. “All legislative and executive powers, of The Mohegan Tribe not granted to The Council of Elders shall be vested in The Tribal Council and shall be exercised in accordance with this Constitution and laws of the United States applicable to Indian tribes ..Constitution of the Mohegan Tribe of Indians of Connecticut, Article IX, Section I. For Gaming matters, “all governmental and proprietary powers of The Mohegan Tribe” ... “shall be exercised by The Tribal Gaming Authority ...” Constitution of the Mohegan Tribe of Indians of Connecticut, Article XIII, Section I. It is for this reason that ordinances related to Gaming are both passed by the Tribal Council and approved by the Management Board of the MTGA.

. This is in contrast to time limitations contained in a limited waiver of sovereign immunity, which uniformly have been held to be jurisdictional and non-waivable. Long v. Mo *379 hegan Tribal Gaming Authority, 1 G.D.R. 5, 8 (1997); Jenkins v. Mashantucket Pequot Gaming Enterprise, 1 Mash.Rep. 9, 1 Mash. 7 (1993). Given that no defendant is cloaked with sovereign immunity, a State law statute of limitations defense does not invoke the jurisdiction of the Gaming Disputes Court, and should be treated as a special defense.