*245 MEMORANDUM OF DECISION
GUERNSEY, C.J.
The above-entitled matter was tried in the Gaming Disputes Trial Court as a hearing in damages, with liability conceded by the Defendant. Inasmuch as the Defendant is not a Tribal entity, the Mohegan Torts Code, MTC § 3-241 et seq., is inapplicable, Lubrano v. Brennan Beer Gorman Architects, LLP Et Al., 1 G.D.A.P. 48, 7 Am. Tribal Law 369 (2008), notwithstanding the presence of the Mohegan Tribal Gaming Authority as intervening Plaintiff.
It is uncontested that the Plaintiff, Kenneth P. Girard, now 58 years of age, was, at the time of the accident giving rise to this action, and remains a bus driver for the Mohegan Sun. A Viet Nam veteran, after pursuing a career in the restaurant business, in the mid 1980’s he started driving for a living in the mid 1980’s. In the course of his career he drove for various delivery services, including Federal Express and Airborne, until March, 2008 when he became a bus driver for Mohegan Sun.
On May 26, 2008 he was assigned to work the second shift, starting at 2:00 p.m. driving a shuttle bus on the “Winter Route”. At approximately 7:30 p.m. after dropping off all his passengers at the bus lobby shuttle stop, he was proceeding westbound through the Autumn Bus area and observed a “Courtyard By Marriott” shuttle van parked diagonally ahead of him. Upon observing the backup lights of the Marriott van come on, the Plaintiff brought his shuttle bus to a stop. The Marriott van then proceeded to back out of its parking space at a high rate of speed (estimated by the Plaintiff to be thirty miles per hour) and collided with the Plaintiffs shuttle. Seven passengers on the Marriott van apparently sustained minor injuries. The Plaintiff declined to go to the hospital that night, preferring to see how he felt in the morning, although at the time he felt pain in his right wrist.
By the next day, suffering from right wrist and shoulder pain, the Plaintiff presented to Concentra Medical Center, where he was diagnosed as suffering from a wrist sprain and shoulder sprain. X-rays of the right wrist were obtained and revealed no fracture or other abnormality. He was prescribed physical therapy three times per week for four weeks for arm and neck pain, but on June 4, 2008 after five therapy sessions the therapist felt that goals had been met and he was discharged from therapy and cleared to return to regular duty at work. However, on June 6, 2008 he returned to Concentra as a result of a “stiff, painful feeling in the back of his neck.” [1] At that time, although no swelling, tenderness or restricted range of motion was noted by the nurse practitioner, it was felt that his cervical strain had been reactivated by driving. He was instructed to continue with his home exercise program, and return to work on June 9, 2008 but with restricted duty (sitting for 50% of the time, no lifting over five pounds, no bending, no pushing/pulling over ten pounds) and that he should not return to driving. Although he was directed to return to physical therapy, by June 11, 2008 the Plaintiff felt that his pattern of symptoms was worsening, and he was referred to Norwich Orthopedic Group.
On June 13, 2008 the Plaintiff was examined by Dr. Gabriel Abella, who found him in no acute distress and with cervical ranges of motion that produced no complaints of pain. Dr. Abella felt that an MRI of the cervical spine was appropriate, which was performed at Backus Hospital *246 on July 2, 2008, the results of which Dr. Abella felt were significant for a C5-6 osteophyte complex. Given that past therapy had not focused on the neck, the Plaintiff was referred for additional therapy, which was delayed, apparently due to difficulty in obtaining authorization from the compensation carrier. When seen by Dr. Abella on August 12, 2008, the cervical range of motion was noted to be “not particularly apprehensive: but that there were “some limitations and apprehension with left rotation.” Also noted was some left-sided myofascial spasm.
When therapy was apparently later approved, it lasted for six sessions. Of significance is a notation from the third session, noting that the Plaintiff “remains 15% limited—[left] cervical [rotation],” with a later (somewhat inconsistent) note that there was “[increased] left cervical rotation [to] 80% mild end ROM pain.” The Plaintiff was discharged from therapy on November 20, 2008 with his current status noted as “much better” in all areas and complete “goal achievement.”
At the followup visit with Dr. Abella on December 2, 2008 the just concluded physical therapy was described as “without further benefit.”[2] Examination revealed left sided limitations in left cervical rotation as compared to the right. Dr. Abella suggested a trial of chiropractic manipulation, but testimony at trial indicated that the compensation carrier denied coverage for this, and in any event the Plaintiff was “a little nervous about it”.
A disability evaluation was performed by Dr. Abella on June 23, 2009. Examination on that date revealed complaints of “some left sided neck pain with bilateral side bending and left worse than right rotation.” Paraspinal spasm and tenderness on the left side on palpation of the left paracervicals and upper trapezius was noted. The diagnostic impression was “chronic left sided cervical sprain/strain/myofascial pain status post work related motor vehicle collision.” The Plaintiff was assigned a 14.3% cervical spine impairment[3]. No surgery was anticipated at that time or in the future. With respect to any pre-existing conditions, Dr. Abella noted the pre-existent disc degeneration, but felt it was “not ratable using DRE methods.” No follow-up treatment was felt necessary at that time.
There were two independent medical examinations by Dr. Jeffrey Steckler. The first, on July 23, 2008, revealed that the Plaintiff had mildly painful cervical motions at the extremes of motion and no apparent spasm. Dr. Steckler felt the MRI results to be “entirely normal”, and was of the opinion that the Plaintiff had sustained a strain of the cervical spine and a temporary injury to the right upper extremity, without residual effects. Dr. Steckler felt the Plaintiff had recovered from the cervical spine injury, should be placed in a home exercise program, and could return to bus driving.
When seen again by Dr. Steckler on August 5, 2009, the examination revealed “full rotation, full flexion and extension.” Dr. Steckler assigned essentially the same impairment rating as Dr. Abella, rounding it down to 14%, and noted that the Plaintiff “[c]ertainly has some minimal symptoms at this time and requires no further care.” *247 Dr. Abella, in a letter dated August 31, 2009, stated he had reviewed Dr. Steek-ler’s recommendations and had no disagreement with them.
Similarly, there is no disagreement as to economic loss. The medical expense has been fixed at $5,486.44 and the lost wages are stipulated to be $2,411.49, for a total economic loss of $7,897.93. The Plaintiff lost one week of full time work, and worked part time for approximately 1 ⅛ months.
As for non-economic loss, the Plaintiff underwent a total of eleven physical therapy sessions and ohe MRI. The right; wrist problem has resolved and he continues to have some degree of pain or discomfort with left cervical rotation, although the descriptions of the severity vary widely, He describes himself as being “pretty sore” at the end of an eight hour day. Driving poses difficulties in that he has to turn his body to look to the left [4]. When he has to check identification cards for employees entering the shuttle bus, he testified that he must physically turn to the right. His deposition testimony, however, was that he had full range of motion to the right and 75% to the left. The only identified activity that he has had to curtail was riding his motorcycle. He testified at trial that he has had no treatment since the summer of 2009[5] and he does not take medication for his injury.
The medical evidence clearly shows persistent pain and discomfort with cervical bending to the left. The Plaintiff was actively treated for a period of slightly more than six months (May 27, 2008 through December 2, 2009), which consisted solely of physical therapy. The treating orthopedist and the independent medical examiner are in agreement this work-related accident is causally connected with the Plaintiffs symptoms. There is a consensus that he does not require treatment.
In light of the evidence presented, the Court finds that fair, just and reasonable compensation for the non-economic loss suffered by the Plaintiff as a result of this accident is $25,000.00. As previously noted the economic loss is $7,897.93, for a total award of $32,897.93.
It is further found that at the time the Plaintiff sustained the injuries for which damages are recovered in this action he was in the employ of the Plaintiff employer and within the scope of the Mohegan Workers Compensation Act, MTC § 4-171 et seq., and that the Employer has paid to or for the benefit of the plaintiff compensation as defined in MTC § 4-226 in the amount of $6,706.25 for indemnity and $4,259.69 for medical, for a total of $10,965.94.

. Plaintiff’s Exhibit 2, service date 6/6/2008.

. It is unclear whether this is the patient’s description or the doctor’s conclusion; presumably it is the former.

. This is a mathematical computation based on the 5% whole person impairment actually assigned by the AMA Guides to the Evaluation of Permanent Impairment, 5th Ed. The 5% is divided by .35 to yield the regional (cervical) rating.

. At trial, he described that he could look to the right to a point corresponding to 3:00 o’clock, but to the left only to 10:00 to 10:30 without pain.

. The treatment effectively ceased on December 2, 2008; the office visit to Dr. Abella on June 23, 2009 was for a disability evaluation.